IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK T. RAY, III,                    )
                          Plaintiff,      )
                                          )
        vs.                               ) Civil Action No. 12-985
                                          ) Judge David Stewart Cercone/
JEFF ROGERS, Corrections Program          ) Magistrate Judge Maureen P. Kelly
Manager; DAVID MITCHELL, Captain;         )
COI HARKLEROAD, Corrections Officer;      )
COI STEPHENS, Corrections Officer;        )
MICHAEL SMITH, Activities Mgr/PRC;        ) Re: ECF No. 47
DAVID GRAINEY, MAJOR OF GUARD;            )
MARK CAPOZZA, Deputy of                   )
Services; F. NUNEZ, Hearing Examiner;     )
GREG JOHNSON, Principal, Director of       )
Educational Services -Member of PRC       )
Misconduct Appeal Review; CARLA           )
SWARTZ, Unit Manager PFC; R. DIETZ,       )
Psychology Manager; LOUIS FOLINO,         )
Superintendent; CAPTAIN DURCO,            )
Shift Commander; CO1 McDONOUGH;           )
CAPT. HAYWOOD,  SECURITY OFFICE           )
CAPTAIN; LT. SHRADER, Lieutenant          )
of RHU; LT. MIEGHAN, Lieutenant;          )
DORINA VARNER, Chief Grievance            )
Officer; ROBERT MACINTYRE, Chief          )
Hearing Examiner; LT. ARMSTRONG,          )
Lieutenant, Security Office; DAN DAVIS,   )
Grievance Coordinator; CAPT WALKER        )
RHU CAPTAIN; LT. BARKEFELT,               )
Lieutenant; CO1 MILLER, Hearing Officer,  )
                          Defendants.     )


## REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

Plaintiff, Frederick T. Ray, III ("Plaintiff"), is an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State

Correctional Institution ("SCI") at Smithfield.  Plaintiff initiated this civil rights action on July

13, 1012, bringing claims against twenty-four Defendants, all of whom appear to be employed at SCI Greene where Plaintiff was previously incarcerated. In his Amended Complaint, comprised of 312 paragraphs, Plaintiff alleges that Defendants violated his rights provided by the First and Fourteenth Amendments to the United States Constitution relative to grievances filed by Plaintiff and misconducts he received while at SCI Greene. ECF No. 15.

Defendants filed a Motion to Dismiss for Failure to state a Claim ("the Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 7, 2013, which is presently before the Court. ECF No. 47. Plaintiff responded to the Motion on December 9, 2013, rendering it ripe for review. ECF No. 61. For the reasons that follow, it is respectfully recommended that the Motion be granted in part and denied in part.

## II.    REPORT

### A.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is

properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**B.    DISCUSSION**

**1. Statute of Limitations (Counts I-XI, XIII, XV and XVI)**

Defendants argue that Plaintiff's claims brought at Counts I through XI, XIII, XV and XVI are barred by the two year statute of limitations applicable to actions arising under 42 U.S.C. § 1983.  See Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (federal courts apply the state statute of limitations for personal injury in Section 1983 cases which in Pennsylvania is two years); Smith v. Holtz, 87 F.3d 108, 111 n.2 (3d Cir. 1996) (the appropriate limitations period for §1983 actions brought in the federal courts located within the Commonwealth of Pennsylvania, is two years); 42 Pa. C.S.A. § 5524.  Defendants contend that because Plaintiff initiated the instant action on July 6, 2012,[1] his claims based on conduct that occurred prior to July 7, 2010, are untimely and that, because the events at issue in Counts I through XI, XIII, XV and XVI took place prior to July 7, 2010, and Plaintiff was aware of the injuries they caused at the time, they should be dismissed.  See Montgomery v. De Simone, 159

---

[1] The case was actually initiated on July 13, 2012, when Plaintiff submitted a Complaint along with a Motion for Leave to Proceed in Forma Pauperis.  ECF No. 1.  Defendants have generously given Plaintiff the benefit of six days under the prisoner mailbox rule by contending that the action was commenced on July 6, 2012.  See ECF No. 48, p. 4.

F.3d 120, 126 (3d Cir. 1998), *quoting* Genty v. Resolution Trust Corp, 937 F.2d 899, 909 (3d Cir. 1991) (under federal law "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action").

As Plaintiff correctly points out, however, the statute of limitations applicable to Section 1983 actions is properly tolled while the prisoner exhausts administrative remedies.[2] See Paluch v. Sec'y Pennsylvania Dep't Corr., 2011 WL 3652418, at *3 (3d Cir. Aug. 19, 2011). See also Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001). Plaintiff therefore was required to file a complaint within two years of the date he knew or had reason to know of his alleged injuries plus the time it took to exhaust administrative remedies.

Here, it is clear from the face of the Amended Complaint that the vast majority of Plaintiff's grievances were not denied at final review, and thus his administrative remedies were not exhausted, until after July 12, 2010. See ECF No. 15, ¶¶ 91, 112, 142, 149, 169, 178, 183, 220, 225. Although Plaintiff has not included the dates that review became final on three of his grievances, it cannot be said at this juncture that they were denied prior to July 6, 2010. Id. at ¶¶ 155-159, 184-188, 191-196. Indeed, two of the three remaining grievances were filed after those that were finally reviewed on July 12, 2010, or later. Moreover, Plaintiff has represented in his responsive brief that the third remaining grievance was not denied at final review until August 4, 2010. See id. at ¶¶ 184, 191; ECF No. 62, p. 10. It therefore appears that Plaintiff has brought

---

[2] The PLRA requires a prisoner filing a Section 1983 action to first exhaust administrative remedies which, in turn, requires the inmate to submit a legible claim or grievance setting forth all relevant facts and identifying all persons with information relevant to his claims; appeal an unfavorable decision by a grievance officer to the Facility Administrator for a second level of review; and submit a final appeal of the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals. 42 U.S.C. § 1997(e)(a); Spruill v. Gillis, 372 F.3d 218, 232-233 (3d Cir. 2004).

the claims set forth in Counts I-XI, XIII, XV and XVI within two years of his alleged injuries plus the time it took him to exhaust his administrative remedies. Plaintiff's claims therefore are not barred by the statute of limitations and Defendants' Motion in this regard is properly denied.

### 2. Due Process Claims (Counts I, II, III, IV, XI, XIII, XIV and XVI)

Plaintiff alleges at Counts I, II, III, IV, XI, XIII, XIV and XVI of the Amended Complaint that Defendants denied him due process in violation of his rights provided by the Fourteenth Amendment. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Thus, to establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Defendants advance five general arguments as to why Plaintiff's due process claims should be dismissed. First, Defendants argue that Plaintiff's claim brought at Count I, wherein Plaintiff alleges that his personal and legal property was confiscated and/or destroyed without due process, should be dismissed because Plaintiff had an adequate post-deprivation remedy available to him through a state court action.

Indeed, the United States Court of Appeals for the Third Circuit has held that the unauthorized intentional deprivation of property by a prison official, as has been alleged here, does not violate the Due Process Clause where the inmate has a meaningful post-deprivation remedy available to him. Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008), *quoting* Hudson v. Palmer, 468 U.S. 517, 533 (1984). See Ball v. Campbell, 2011 WL 7080692, at *7 (M.D. Pa. Dec. 9, 2012), *Report &Recommendation adopted by* 2012 WL 201846 (M.D. Pa. Jan. 23, 2012

("there are two crucial components to any inmate due process claim in this setting: (1) the confiscation of property; and (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy").  Moreover, the Court of Appeals for the Third Circuit has found that adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process.  Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010); Tillman v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000).  The existence of either of these post-deprivation remedies therefore "forecloses any due process claim . . . even if [the] inmate is dissatisfied with the result of the process."  Iseley v. Horn, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996), citing Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995).

Plaintiff in this case does not dispute that he had a post-deprivation through the state courts available to him but argues that, because the deprivation of which he complains was intentional, he should be afforded due process protection.  In Hudson v. Palmer, 468 U.S. 517 (1984), however -- the case upon which Plaintiff relies -- the United States Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does *not* constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Id. at 533 (emphasis added).  Because Plaintiff had a post-deprivation remedy available to him, his due process claim brought at Count I is properly dismissed.[3]

---

[3] Moreover, although not argued by Defendants, not only did Plaintiff have an available post-deprivation remedy through the state courts but he had an available remedy through the prison grievance process which he took full advantage of having filed at least six grievances complaining of the confiscations and/or destruction of his property. See ECF No. 15, ¶¶ 133, 146, 155, 164, 184, 191.

Second, Defendants argue that to the extent Plaintiff's due process claims revolve around the process employed in grievance and/or misconduct proceedings they should be dismissed because Plaintiff has no constitutional right to a prison grievance procedure in the first instance.

Plaintiff challenges the prison grievance procedures in Counts IV, XI and XIII of the Amended Complaint alleging that the grievances at issue in those Counts were denied on the wrong grounds, without investigation and/or that documentary evidence was not considered. ECF No. 15, ¶¶ 108, 109, 192, 194, 217, 218, 220. As argued by Defendants, however, the Court of Appeals for the Third Circuit has rejected due process claims relating to prison grievance procedures finding that "[p]risoners do not have a constitutional right to prison grievance procedures". . . [n]or do they have a liberty interest protected by the due process clause in the grievance procedures." Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013), *citing* Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause). As such, to the extent that Plaintiff's due process claims brought at Counts IV, XI and XIII revolve around the prison grievance procedures, they should be dismissed.

Similarly, it is well established that prison inmates are generally not entitled to procedural due process in prison disciplinary hearings, since the sanctions imposed as a result of those hearings usually do not impinge on a protected liberty interest, and that an inmate's due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). See Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170-71 (3d Cir. 2011).

Review of the Amended Complaint in this case shows that Plaintiff arguably received three misconducts which are the subject of his due process claims brought at Counts II, III and

XIV.  First, Plaintiff was committed to the Restricted Housing Unit ("RHU") on May 28, 2010, and subsequently received a DC141 "Other Report," indicating that Plaintiff was a "danger to himself or others."  ECF No. 15, ¶ 39.  Although not a misconduct per se, the "Other Report" precipitated an Administrative Custody Hearing which was held on June 3, 2010.  At that time, it was determined that Plaintiff should be continued on Administrative Custody confinement pending transfer to another facility.  Id. at ¶¶ 43, 44.

Second, Plaintiff received a misconduct on June 4, 2010, charging him with abusive language; refusing to obey an order; possession of, and failing to report, contraband; destroying property; theft of services; and violating the inmate handbook.  Id. at ¶¶ 65, 66.  Following a hearing held on June 8, 2010, Plaintiff was found guilty of four of the charges and given 90 days in Disciplinary Confinement for each charge or 360 days.  Id. at ¶¶ 76, 77.

Lastly, Plaintiff was issued a misconduct on May 15, 2012, for sexual harassment and placed in pre-hearing confinement or on "restricted movement."  Id. at ¶¶ 236, 237, 254.  On May 17, 2012, the misconduct was dismissed for lack of evidence but without prejudice to be rewritten.  Although the misconduct was rewritten several times, the last occurring on May 23, 2012, the charges were dismissed each time and no punishment was assessed.  Id. at ¶¶ 246, 247, 253, 254, 255.  Plaintiff nevertheless complains that even though the charges were dismissed and the need for his placement in prehearing confinement had ended, he continued to be on restrictive movement for seven more days.

Notwithstanding Plaintiff's protestations to the contrary, none of these imposed sanctions constitute an atypical and significant hardship in relation to the ordinary incidents of prison life and the alleged absence of due process with respect to the misconducts Plaintiff received is of no moment.  See Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) (citation omitted) ("Sandin

instructs that placement in administrative confinement will generally not create a liberty interest"); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in segregation was not an atypical and significant hardship).

Moreover, to the extent that Plaintiff complains that the misconducts generally resulted in the loss of his prison employment and eligibility for parole, the United States Court of Appeals for the Third Circuit has specifically held that the termination of prison employment as the result of a disciplinary sanction does not rise to the level of atypical of significant hardship and thus does not give rise to due process protection. Ayers v. Campbell, 267 F. App'x 176, 177 (3d Cir. 2008). See Perry v. Lackawanna Cnty. Children & Youth Services, 345 F. App'x 723, 726-27 (3d Cir. 2009); Horan v. Wetzel, 2014 WL 631520, at *10 (M.D. Pa. Feb. 18, 2014). See also Dawson v. Frias, 397 F. App'x 739, 741 (3d Cir. 2010) (it is a well-established principle that prisoners have neither a liberty or property interest in prison employment). It has also been held that the denial of parole to a Pennsylvania state inmate is not the type of atypical and significant hardship contemplated by the Supreme Court in Sandin. Price v. Cameron, 2013 WL 373170, at *3 (E.D. Pa. Jan. 13, 2013), *Report &Recommendation adopted by* 2013 WL 390961 (E.D. Pa. Jan. 31, 2013); Parker v. Bickell, 2012 WL 4835318, at *6 (E.D. Pa. Sept. 19, 2012), *Report &Recommendation adopted by* 2012 WL 4835319 (E.D. Pa. Oct. 11, 2012). Accordingly, Plaintiff's due process rights relative to the misconducts he received at SCI Green were not triggered in the first instance. Therefore, he has failed to state a due process claim at Counts II, III or XIV of the Amended Complaint and those claims are properly dismissed.

Finally, although not specifically argued by Defendants, Plaintiff's due process claim brought at Count XVI is properly dismissed as well. There, Plaintiff generally challenges the manner in which disciplinary hearings and subsequent appeals are conducted at SCI Greene and

claims that the allegedly deficient practices have evolved into a custom and/or policy. Having already found, however, that Plaintiff had no due process rights relative to the misconducts he received, it necessarily follows that he is unable to succeed on a his due process claim at Count XVI.

### 3. First Amendment Retaliation Claims (Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII)

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under Section 1983. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Merely alleging the fact of retaliation, however, is insufficient. Rather, to prevail on a retaliation claim, a plaintiff must show that: (1) the he engaged in constitutionally protected conduct; (2) that he was subjected to an adverse action; and (3) the protected activity was a substantial motivating factor in the decision to take the adverse action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). A causal connection between the protected conduct and the adverse action may be established by showing that there is a temporal proximity between the plaintiff's protected activity and the defendants' adverse action. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003), *citing* Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link).

If the plaintiff proves these three elements, the burden shifts to the state prison official to prove that he or she would have taken the same action without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating

factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, Plaintiff has brought claims of retaliation in violation of his rights provided by the First Amendment at Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV of the Amended Complaint. At Count I, Plaintiff alleges that Defendants Harkleroad and Stephens confiscated and/or destroyed his personal and legal property in retaliation for generally "filing grievances" and for being a prison rights advocate. Id. at ¶¶ 28, 30. Plaintiff, however, does not identify what specific grievances he filed, when he filed them, whom they were filed against or that either Harkleroad or Stephens had any knowledge that Plaintiff had filed any grievances or assisted others in doing so. Plaintiff therefore has failed to plead sufficient facts from which a causal connection between his having filed grievances and Defendants' actions can be inferred.

Moreover, according to the Amended Complaint, Harkleroad and Mitchell allegedly confiscated and/or destroyed Plaintiff's property on May 28, 2010. All of the grievances that Plaintiff alleges he filed were submitted after that date. See id. at ¶¶ 1, 12, 18-21, 30, 104, 119, 133, 146, 155, 164, 174, 179, 180, 184, 191, 233. Because Harkleroad and Mitchell could not have interfered with Plaintiff's property in response to grievances that had not yet been filed, Plaintiff's retaliation claim brought at Count I is properly dismissed.

At Count II, Plaintiff alleges that Defendants Rogers and Mitchell retaliated against him for generally "filing grievances" by filing a false report indicating that Plaintiff was a danger to himself, which resulted in Plaintiff being confined to the RHU. Id. at ¶¶ 39, 42, 44. Plaintiff also alleges that the actions of Defendants Smith, Capozza and Grainy, who were members of the Program Review Committee ("PRC"), retaliated against him for "filing grievances" when they upheld the decision to continue Plaintiff's confinement in the RHU. Id. at ¶¶ 44, 56.[4] Plaintiff, however, again fails to identify what grievances he is referring to, when they were filed, whom they were filed against or that Rogers, Mitchell, Smith, Capozza or Grainy had any knowledge that Plaintiff had filed the grievances. Further, as with Count I, Harkleroad and Mitchell allegedly falsified the "Other Report" on May 28, 2010, before Plaintiff had filed any of the grievances cited in the Amended Complaint. See id. at ¶¶ 1, 12, 18-21, 30, 104, 119, 133, 146, 155, 164, 174, 179, 180, 184, 191, 233. As such, Harkleroad and Mitchell could not have falsified the report in retaliation for Plaintiff having filed those grievances. Plaintiff therefore has failed to state a retaliation claim against Defendants at Count II.

At Count IV, Plaintiff alleges that he filed a grievance on June 1, 2010, challenging his confinement to the RHU. Plaintiff, however, re-filed the grievance on June 15, 2010, reframing his claim as one against Rogers for falsifying the "Other Report," wherein Rogers stated that Plaintiff was a danger to himself and others. Id. at ¶¶ 104, 106. Plaintiff claims that Defendants Davis and Folino denied the grievance and his appeal therefrom in retaliation for Plaintiff having generally "filed grievances." Id. at ¶¶ 105, 111, 116. Nowhere, however, does Plaintiff identify what grievances are at issue, when they were filed, whom they were filed against, that Davis and Folino had any knowledge of those grievances or any other facts that would suggest there is a

---

[4] Although Plaintiff also alleges that Defendant Folino denied Plaintiff's appeal following the PRC's decision to uphold his RHU status, Plaintiff does not allege that Folino denied the appeal in retaliation.

causal connection between Defendants' actions and Plaintiff having filed grievances. Plaintiff's retaliation claim at Count IV therefore is properly dismissed.

At Counts V, VI, VIII, IX, X, and XI, Plaintiff alleges that Defendants Mieghan and Shrader retaliated against Plaintiff for generally "filing grievances" when they denied various grievances filed by Plaintiff as being "frivolous." Id. at ¶¶ 120, 132, 139, 145, 157, 162, 166, 167, 175, 176, 181, 185, 186, 192, 194, 199. As previously discussed, Plaintiff's failure to identify the particular grievances at issue, when were they filed, against whom they were filed against and his failure to allege that either Mieghan or Shrader had any knowledge of those grievances is fatal to his claims. Indeed, it is evident from the Amended Complaint that none of the grievances filed by Plaintiff were brought against Mieghan or Shrader. As such, any connection between any grievances filed by Plaintiff and Mieghan and Shrader's findings that the grievances before them were frivolous appears attenuated at best. See Victor v. Lawler, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010) (the courts have rejected a retaliation claim against one defendant based on a grievance filed against another defendant); Evans v. Rozum, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 19, 2009) (holding that to the extent the grievances and pending lawsuit were not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others"); Royster v. Beard, 308 F. App'x 576, 579 (M.D. Pa. 2008) (concluding that the plaintiff failed to satisfy the causal connection requirement in his retaliation claim against defendant Huber because he could not identify a previously filed grievance in which Huber was named).

Plaintiff also asserts that "[w]hen an inmate receives five (5) "frivolous" determinations within thirty (30) days, he will be placed on grievance restriction," and that Mieghan and Shrader deliberately deemed Plaintiff's grievances as frivolous as a "retaliatory weapon" in order to

"minimize the number of grievances submissions." ECF No. 15, ¶¶ 124, 128. Plaintiff's theory, however, is necessarily based on the assumption that Mieghan and Shrader anticipated that Plaintiff would file five grievances within thirty days and that they did so the first time one of Plaintiff's grievances came before them. Such an assumption, however, is purely speculative.

Further, it is significant that Mieghan found only four grievances to be frivolous thereby falling short of the number needed to invoke the grievance restriction rendering it less than plausible that Mieghan's findings were designed to retaliate against Plaintiff. Moreover, although Mieghan denied the grievance Plaintiff filed on June 5, 2010, in which he complained that Defendants Haywood, Harkleroad and Stephens were denying Plaintiff access to his legal property, Mieghan did not find the grievance frivolous but, rather, accommodated Plaintiff by allowing him to "retrieve needed documents." Id. at ¶ 147. These facts, as alleged by Plaintiff, seemingly thwart any argument that Mieghan was intent on retaliating against Plaintiff by finding his grievances frivolous. Plaintiff therefore has failed to plead sufficient facts to establish a causal connection between the grievances he filed and a finding of frivolity.

The Court also notes that, according to the Amended Complaint, each of the grievances that were denied as frivolous were subsequently reviewed by Defendant Folino at the second level of review and by Defendant Varner at the final level of review, both of whom upheld Mieghan and Shrader's findings that the cited grievances were frivolous. Id. at ¶¶ 125, 126, 141, 142, 158, 159, 168, 169, 177, 178, 182, 183, 188, 195, 196. Folino and Varner's concurrence that Plaintiff's grievances were frivolous seemingly precludes a finding that Mieghan and Shrader only found so in order to retaliate against Plaintiff. In addition, although Plaintiff alleges in Counts VIII and X that Folino and Varner were also retaliating against him for "filing grievances" by upholding Mieghan and Shrader's findings of frivolousness, id. at ¶¶ 162, 189,

14

the suggestion is more than speculative given the attenuated relationship between Plaintiff and Defendants Folino and Varner. Plaintiff has failed to allege any facts from which it could be inferred that either Folino or Varner had any interest in or any motivation to thwart Plaintiff from filing grievances or that they were otherwise intent on retaliating against Plaintiff. Plaintiff therefore has failed to state a claim for retaliation against Defendants Mieghan, Shrader, Folino or Varner at Counts V, VI, VIII, IX, X and XI and those claims should be dismissed.[5]

At Count VII, Plaintiff alleges that he filed a grievance on June 5, 2010, complaining that Defendants Haywood, Harkleroad and Stephens were denying Plaintiff access to his legal property. Plaintiff alleges that Defendant Mieghan denied the grievance but allowed Plaintiff to "retrieve needed documents." Id. at ¶ 147. Plaintiff nevertheless claims that "Haywood, Mieghan and Harkleroad retaliated against Plaintiff for "filing grievances." Although Plaintiff generally alleges that he filed numerous grievances against Security Office Staff and subordinates of Defendant Mieghan, he again fails to identify what specific grievances he is referring to, when they were filed, that Harkleroad, Haywood or Mieghan were the subject of those grievances or that they had any knowledge that the grievances had been filed. Further, it is clear from Plaintiff own assertions that he was not denied access to his legal property but was allowed to "retrieve need documents."

At Count XII, Plaintiff alleges that on August 24, 2010, he was informed by Defendant Rogers that he was being transferred to a Special Management Unit and that the transfer was in retaliation for generally "filing grievances." Id. at ¶¶ 203, 208, 209, 212, 213. As before,

---

[5] It should also be pointed out that, although Plaintiff has not specifically alleged in Counts V or VI that Defendant Harkleroad falsified an inventory receipt or that Harkleroad and Haywood destroyed his legal property in retaliation for Plaintiff having "filed grievances," Plaintiff eludes to such a claim in his Amended Complaint under the statement of "Legal Claims" relative to these Counts. ECF No. 15, p. 4, ¶¶ E, F. All the grievances cited by Plaintiff in the Amended Complaint, however, were filed after the inventory report was allegedly falsified and after Plaintiff's property was allegedly destroyed. As previously discussed, because Plaintiff's grievances had not yet been filed, Harkleroad and Haywood's actions could not have been in response to or in retaliation for those filings. ECF No. 15, ¶¶ 1, 12, 18-21, 30, 104, 119, 133, 146, 155, 164, 174, 179, 180, 184, 191, 233.

Plaintiff's failure to set forth the particulars of those grievances or that Rogers was aware that they had been filed precludes a finding that Plaintiff has set forth sufficient facts to raise his claim above the speculative level. Indeed, the only grievance that Plaintiff appears to have filed against Rogers was submitted on June 15, 2010, two and a half months earlier. Id. at ¶ 106. The lack of temporal proximity between the two events, coupled with the lack of other facts that would show a causal connection between Plaintiff's transfer and "filing grievances," is fatal to Plaintiff's claim. See Fischer v. Transue, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation); Killen v. N.W. Human Servs., Inc., 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); Mar v. City of McKeesport, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation).

At Count XIII, Plaintiff alleges that Defendant Davis engaged in retaliatory conduct on June 25, 2010, when he placed Plaintiff on "grievance restriction" because of the various grievances filed by Plaintiff found to be frivolous. Plaintiff contends that Davis' retaliatory motive is evidenced by the fact that Plaintiff only had five frivolous filings at the time but that DOC policy requires "more than five" to warrant the restriction. Id. at ¶ 223. Plaintiff also complains that the findings that his grievances were frivolous, as well as the denial of his appeals to Folino and Varner, all "manifest a pervasive atmosphere of racism and retaliation." Id. at ¶ 229. Plaintiff, however, does not specifically allege in Count XIII what conduct he engaged in that caused these Defendants to retaliate against him. To the extent that Plaintiff basis his claim on his general history of filing grievances, his claims fail for the same reasons stated above. Moreover, according to Plaintiff's allegations in the Amended Complaint, he had at least six

grievances deemed frivolous prior to Davis placing Plaintiff on grievance restriction.  Id. at ¶¶
120, 138, 156, 166, 176, 234.  Plaintiff's own assertions therefore establish that Davis was acting
in accordance with DOC Policy and precludes a finding that Davis was retaliating against
Plaintiff.

Lastly, at Count XIV of the Amended Complaint, Plaintiff purports to bring retaliation
claims against Defendants Armstrong and McDonough for issuing a misconduct against Plaintiff
on May 12, 2012, after Plaintiff submitted a grievance on May 8, 2012, accusing another
corrections officer of sexually harassing Plaintiff.  Id. at ¶¶ 236, 245, 263.  Plaintiff also alleges
that Defendants Folino, Capozza and Haywood retaliated against him for "filing grievances" by
keeping him on restricted movement after the misconduct was dismissed and the need for the
restriction had expired.  Id. at ¶¶ 258, 259, 269, 270.[6]

With respect to Plaintiff's claims against Armstrong and McDonough, it is clear from the
Amended Complaint that Plaintiff engaged in protected activity when he filed the grievance on
May 8, 2012, accusing CO Carter of sexual harassment, and that Plaintiff suffered an adverse
action only four days later when Armstrong and McDonough filed a misconduct against Plaintiff
charging him with sexual harassment for filing the grievance.  The nature of the misconduct
coupled with its close proximity to the filing of Plaintiff's grievance, appears sufficient to infer a
causal connection between the two events.  Although Defendants generally argue that a finding
of guilt of a misconduct checkmates a retaliation claim, the argument does not apply here as
Plaintiff was not found guilty of the misconduct; rather it was dismissed without prejudice to
refiling.  Id. at ¶¶ 239, 247, 255.  See Bonaparte v. Beck, 441 F. App'x 830, 832-33 (3d Cir.
2011) (a finding of guilt of the underlying misconduct necessarily establishes that the same

---

[6] Although Plaintiff also refers to Defendants Durco, Nunez, Folino and Rogers in Count XIV as having denied
review of Plaintiff's appeals relative to the misconducts, he has not alleged that they did so in retaliation for filing
grievances.  See ECF No. 15, ¶¶ 233-273.

action would have been taken even if the plaintiff had not engaged in the protected activity and precludes a finding that the misconduct was issued in order to retaliate against him). It therefore appears that Plaintiff has stated a claim of retaliation against Defendants Armstrong and McDonough and Defendants' Motion in this regard should be denied.

Plaintiff's claims brought at Count XIV against Folino, Capozza and Haywood regarding his continued confinement on restricted movement, however, are properly dismissed. Plaintiff does not relate their decisions to any particular grievance that Plaintiff filed but again simply states that Defendants' actions were in retaliation for "filing grievances." Id. at ¶¶ 269, 270. As previously discussed, this conclusory assertion is woefully insufficient to raise the right to relief above the speculative level or to state a claim for retaliation. Moreover, Plaintiff has also alleged that, by keeping him on restricted movement, Defendants were acting pursuant to an unwritten policy and/or custom of keeping all inmates on restricted movement after the conclusion of disciplinary hearings which appears to preclude a finding that they kept Plaintiff on restricted movement in order to retaliate against him. Id. at ¶ 258. Under these circumstances, Plaintiff's retaliation claims brought at Count XIV are properly dismissed as well.

### 4. Supervisory Liability (Count XV)

At Count XV of the Amended Complaint, Plaintiff claims in various paragraphs that Defendants Folino, Varner, Haywood, Grainy, Capozza, Davis, Durco, McIntyre, Rogers, Smith, Swartz and Dietz were all "personally involved" in, and thus liable for, the unconstitutional conduct engaged in by their subordinates as alleged in the previous fourteen Counts. See Evanchco v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on

the operation of respondeat superior'"). See also Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (a supervisor can only be held liable if his or her own actions resulted in the constitutional injury and cannot be held responsible for a constitutional violation which he or she neither participated in not approved). Having found that all of Plaintiff's underlying claims, with the exception of the retaliation claims brought at Count XIV against Defendants Armstrong and McDonough, are properly dismissed, it necessarily follows that any liability on the part of the supervisory Defendants is confined to that claim as well. Review of the Amended Complaint, however, shows that Plaintiff has failed to relate his claims of supervisory liability to his retaliation claim against Armstrong and McDonough and thus they are properly dismissed.

Supervisory liability will be found under one of several theories. "First, supervisors may be liable if, with deliberate indifference to the consequences, they 'established and maintained a policy, practice or custom which directly caused the constitutional harm.'" Plouffe v. Cevallos, 2012 WL 1994785 at *4 (E.D. Pa. June 1, 2012), quoting Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010). See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011). "A government policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. quoting Monell v. Dep't of Social Services of New York, 436 U.S. 658, 690 (1978). In either instance, the plaintiff must show that a policymaker is responsible either for the policy or, through acquiescence, for the custom. Id. Second, a supervisor may be found liable where he or she

"participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Plouffe v. Cevallos, 2012 WL 1994785, at *4, *quoting* Santiago v. Warminster Twp., 629 F.3d at 129 n.5. See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d at 72. Under either theory, there must be both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate. Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988), *impliedly overruled on other grounds by* Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

Here, to support his claims, Plaintiff has made only general allegations that these various Defendants either failed to rectify subordinates' misconduct; failed to train, supervise or discipline subordinates; refused to correct a pattern of unconstitutional behavior and/or encouraged misconduct. ECF No. 15, ¶¶ 274-288. Plaintiff, however, fails to correlate the alleged involvement of these particular Defendants to any particular subordinate or any particular misconduct to which they may have acquiesced. Further, the closest Plaintiff comes to alleging a custom and/or policy in Count XV is that there was generally "a custom of abuse;" that there was "knowledge of pattern of unconstitutional actions by subordinates;" a custom of "not objectively investigating complaints of abuse;" and a custom of "deliberate indifference. Id. at ¶¶ 279, 281, 285, 287. These assertions, however, are nothing more than conclusions and fail to state a claim.[7]

---

[7] Moreover, at Count XIV, wherein Plaintiff has set forth his only remaining claim against Defendants Armstrong and McDonough, the only custom to which Plaintiff refers is that of keeping inmates on restricted movement longer than necessary which does not speak to his claim that Armstrong and McDonough issued a misconduct against Plaintiff in retaliation for his having filed a grievance. See id. at ¶¶ 258, 259, 263.

Finally, and perhaps most importantly, Plaintiff has alleged that Defendants Folino, Varner, Haywood, Grainy, Capozza, Davis, Durco, McIntyre, Rogers, Smith, Swartz and Dietz were all on notice of the alleged constitutional violations of their subordinates through the grievance and misconduct appeal processes. Id. at ¶¶ 277, 282-285. It is well established, however, that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct. Rode v. Dellarciprete, 845 F.2d at 1207. See Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct"); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (finding that allegations that the defendants denied the plaintiff's appeal of his grievance was insufficient to establish the defendant's personal involvement in the challenged conduct); Watkins v. Horn, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement). Under these circumstances, it is apparent that Plaintiff's claims for supervisory liability at Count XV should also be dismissed.

## C.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 47, be granted as to all claims raised in the Amended Complaint with the exception of Plaintiff's First Amendment retaliation claims brought against Defendants Armstrong and McDonough at Count XIV.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation.

Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant

Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right

to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in

accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: February 27, 2014


cc:     The Honorable David Stewart Cercone
        United States District Judge
        All counsel of record by Notice of Electronic Filing

        Frederick T. Ray
        GF-2852
        SCI Smithfield
        1120 Pike Street
        Huntingdon, PA 16652

        All Counsel of Record Via CM-ECF